UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A. GREGORY EATON, and
LANSING FARMS, LLC,

       Plaintiffs,

                                 File No.  1:11-CV-178

v.

                                 HON. ROBERT HOLMES BELL

CULLAN F. MEATHE,

       Defendant.
                                          /

## **O P I N I O N**

This fraud action between two members of a limited liability company comes before the Court on Defendant's motion to disqualify Plaintiffs' counsel. (Dkt. No. 24.) For the reasons that follow, the motion will be denied.

### I.

Plaintiff A. Gregory Eaton and Defendant Cullan F. Meathe each own a 50% interest in Lansing Farms Properties, LLC (identified by Plaintiffs as Lansing Farms, LLC) ("Lansing Farms"). Plaintiff Eaton and Lansing Farms filed this action, alleging that Meathe engaged in fraudulent or oppressive conduct, breach of the parties' operating agreement, and conversion by embezzling and/or converting the property of Lansing Farms for his personal benefit.  Defendant Meathe and Lansing Farms have filed a counterclaim against Eaton,

1

alleging that Eaton breached his fiduciary duties to Meathe when he took over the management of Lansing Farms in 2009.[1]

Defendant Meathe has moved to disqualify Plaintiff's counsel, C. William Garratt, based on discussions between Meathe and Garratt on January 28-29, 2010. In 2009, Garratt obtained a judgment of over $1 million against Meathe and his co-defendant in *TGINN Jets, LLC v. Hampton Ridge Properties, LLC*, Case No. 07-082312-CK (Oakland County Cir. Ct.) (Dkt. No. 33, Pls.' Resp., Ex. C, Am. J.) Garratt conducted a post-judgment creditor's examination of Meathe on January 28, 2010, pursuant to a court order directing Meathe to appear at Garratt's office for examination as a judgment debtor. (Dkt. No. 33, Pl. Ex. E.) Meathe was represented at the creditor's examination by James M. O'Reilly, his counsel in the *TGINN* litigation. During the examination, Meathe testified that he had a potential claim against Eaton and others regarding the formation of Great Lakes Transportation Holdings, LLC ("GLT") and its acquisition of the assets of Metro Cars without the knowledge or consent of Meathe. (Dkt. No. 24, Def.'s Br. Ex. B, Meathe Dep. 26-33). When the issue of the potential claim against Eaton was raised, they went off the record. Meathe's motion to disqualify Garratt is based on his off-the-record discussions with Garratt on January 28-29, 2010. The parties have presented conflicting evidence on what occurred during those discussions.

---

[1] Lansing Farms is both a Plaintiff and a Counter-Plaintiff in this action. For purposes simplicity and clarity in this opinion, the Court will refer to Plaintiff and Defendant in the singular.

Meathe contends that they spent approximately two hours on January 28 and an additional three hours on January 29 exploring the possibility of Garratt pursuing Meathe's cause of action against Eaton regarding Great Lakes' purchase of Metro Cars on a contingent fee basis, with the goal of crediting any recovery, after Garratt's fee, against the judgment that had been entered in the *TGINN* litigation. Meathe contends that the conversation included a discussion of potential counter-claims that Eaton might raise against Meathe, including claims based on the distributions Meathe received from Lansing Farms, which are the same claims that have been asserted in this case. Meathe contends that in the course of the discussions, Garratt obtained substantial privileged, confidential, and secret information about strategy and tactics in handling the Lansing Farms claims from Meathe and his attorneys. (*See generally* Dkt. No. 24, Def.'s Mot., Exs. C-F, O'Reilly, Meathe, Shanaman and Obeid Affidavits.) According to Meathe, Garratt is unfairly and unethically using that information against Meathe in this litigation. Meathe requested Garratt to withdraw as Eaton's attorney in this litigation, and Garratt refused.

Garratt contends that he did not learn anything on January 28 or 29, 2010, that warrants his disqualification. He denies ever representing that he would represent Meathe against Eaton; he denies that there was any discussion about any potential counterclaim Eaton might have against Meathe for money Meathe had taken from Lansing Farms; and he denies learning any confidences, strategy or tactics in handling the Lansing Farms claims. Garratt contends that the focus of the discussion was on Metro Cars rather than on Lansing Farms,

3

and that his only purpose was to ascertain whether there were legal claims or other valuable rights that TGINN could obtain to satisfy its judgment against Meathe. (*See generally* Dkt. No. 34, Pls.' Affs. in Opp'n, Garratt Aff.; Tritt Aff.)

## II.

Meathe contends that Garratt's representation of Eaton in this action violates Rules 1.6 and 1.9 of the Michigan Rules of Professional Conduct ("MRPC")[2] relating to client confidences and conflicts of interest. Rule 1.6 provides that a lawyer shall not knowingly "use a confidence or secret of a client to the disadvantage of the client." MRPC 1.6(b)(2). Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

Motions to disqualify opposing counsel raise two competing public policy interests: preserving client confidences, and permitting a party to retain counsel of his choice. *Manning v. Waring, Cox., Jame, Sklar and Allen*, 849 F.2d 222, 224 (6th Cir. 1988). "[D]isqualification is a "drastic" remedy and should not be employed lightly." *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F. Supp. 2d 896, 898 (W.D. Mich. 2009) (Quist, J.) "A court should only disqualify an attorney when there is a reasonable possibility that some

---

[2]Attorneys practicing before this Court are "subject to the Rules of Professional Conduct adopted by the Michigan Supreme Court," i.e., the Michigan Rules of Professional Conduct ("MRPC"). W.D. Mich. LCivR 83.1(j).

4

specifically identifiable impropriety actually occurred." *Moses v. Sterling Commerce (America), Inc.*, 122 F. App'x 177, 183-84 (6th Cir. 2005) (internal quotations omitted). The Sixth Circuit has articulated a three-part test for determining whether disqualification is warranted:

> 1) the party seeking disqualification had a past attorney-client relationship with the attorney it seeks to disqualify; 2) the subject matter of that relationship is substantially related to the instant case; and 3) the attorney acquired confidential information from the party seeking disqualification.

*Factory Mut.*, 662 F. Supp. 2d at 898 (citing *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990)). The burden is on the party seeking disqualification to prove that opposing counsel should be disqualified. *S.D. Warren Co. v. Duff-Norton*, 302 F. Supp. 2d 762, 767 (W.D. Mich. 2004) (Quist, J.).

**1. Attorney/Client Relationship**

The first *Dana* test asks whether the party seeking disqualification had a past attorney-client relationship with the attorney it seeks to disqualify. Meathe acknowledges that he never entered into a written retainer agreement with Garratt. However, Meathe contends that he disclosed confidences to Garratt while consulting about potential future representation.

"When a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint*, 99 F. App'x 29, 36 (6th Cir. 2004). Accordingly, prospective clients who meet with an attorney but do not retain the attorney are entitled to "at least some of the protections afforded former

5

clients." *Factory Mut.*, 662 F. Supp. 2d at 899. A motion to disqualify an attorney who has met with, but was not retained by, a prospective client "should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp*. test." *Id*. at 900.

The parties have filed conflicting affidavits as to the nature of these discussions. The Court cannot weigh the credibility of these conflicting affidavits. However, the Court does find relevant the undisputed evidence that can be gleaned from the evidence provided. The discussions occurred in the context of a creditor's examination where Garratt represented the opposing party, where Meathe was obligated to respond to inquiries about his assets, where Meathe was represented by his own counsel, and where third parties were present during at least some of the discussions. In addition, no one asserts that Garratt offered to represent Meathe in an action against Eaton. At most, Meathe's affidavits indicate that Garratt showed an interest in representing Meathe, subject to his need to check with his current client, TGINN, or his law partner. (O'Reilly Aff. ¶ 10; Shanaman Aff. ¶ 9; Obeid ¶ 6.) Meathe stated that because he was "anticipating" that Garratt would accept the case, he and his attorneys were "very candid, forthcoming, and thorough" in providing him with "all of the facts, opinions, and tactical impressions of the case." (Meathe Aff. ¶ 20.) Under Michigan law, "a putative client's subjective belief is insufficient to establish an attorney-client relationship where none exists." *Jackson v. Pollick*, No. 90-2271, 991 WL 157247, 2 (6th

6

Cir. Aug. 16, 1991) (citing *Scott v. Green*, 140 Mich. App. 384, 400 (1985) (Kirwan, J., concurring in part), and noting that the majority explicitly adopted the concurring opinion on this issue). Under the circumstances, the creation of an attorney-client relationship is questionable at best.

**2. Substantially Related?**

Assuming there was a qualifying attorney-client consultation, the second *Dana* test asks whether the subject matter of that consultation is substantially related to the instant case; "[A] substantial relationship is measured by the allegations in the complaint, and by the nature of the evidence that would be helpful in establishing those allegations." *Anchor Packing Co. v. Pro-Seal, Inc.*, 688 F. Supp. 1215, 1220 (E.D. Mich. 1998) (quoting *Trone v. Smith* 621 F.2d 994, 1000 (9th Cir.1980)).

Meathe contends that he made disclosures to Garratt concerning Eaton's potential claim against Meathe concerning distributions from Lansing Farm and how such a claim could be defended. (O'Reilly Aff. ¶ 15.) If such disclosures were made, there can be no doubt that they were substantially related to the issues in this lawsuit.

Garratt, however, contends that this lawsuit is not substantially related to Meathe's disclosures because Meathe's disclosures related to Metro Cars. Eaton's complaint in this action does not refer to Metro Cars, or to the sale of Metro Cars' assets to Great Lakes. Garratt denies having any discussions on January 28-29 relating to any potential counterclaim of Eaton against Meathe for money Meathe had taken from Lansing Farms. (Garratt Aff. p. 8.)

7

The Court cannot judge the credibility of the parties on the basis of the affidavits presented, nor can it speculate on the content of the parties' discussions. For purposes of evaluating this motion, the Court will assume that the parties discussed the Lansing Farm distributions.

### 3. Confidential and Significantly Harmful?

The third *Dana* test asks whether the attorney acquired confidential information from the party seeking disqualification. Because Meathe is only asserting that he consulted with, not that he retained, Garratt, the Court must also consider whether any information Garratt received could be "significantly harmful" to Meathe. *Factory Mut.*, 662 F. Supp. 2d at 900.

Eaton contends that Meathe did not impart any "confidential" information to Garratt because Garratt was entitled to information about Meathe's potential claims during the creditor examination, and, in any event, Garratt already knew about the large distributions from Lansing Farms to Meathe through post-judgment collection proceedings before the January 28-29 meeting. (Garratt Aff. ¶ 6.) Garratt avers that he has not told Eaton what was said in that discussion, and "nothing was said that I did not already know that might benefit Mr. Eaton or Lansing Farms in this action." (Garratt Aff. p. 7.)

Meathe contends that Garratt was not only told facts about the Lansing Farms distributions, but also privileged and confidential information about strategy and tactics in handling Eaton's potential Lansing Farms claims. (O'Reilly Aff. ¶ 16; Shanaman Aff. ¶¶ 10, 11.) Although Meathe has not specified what confidential information was divulged to

8

Garratt, Meathe contends that because he provided Garratt information that was substantially related to the claims in this case, a presumption arose that confidential, secret or privileged information was divulged. *See Gen. Elec. Co. v. Valeron Corp.*, 608 F.2d 265, 267-68 (6th Cir. 1979). *See also Quicken Loans v. Jolly*, 2008 WL 2566373 (E.D. Mich. 2008) (noting that Rule 1.9 implies that former counsel acquired confidential information in the prior representation when the subject matter of the two suits is substantially similar).

Because the issue of disqualification has been submitted on affidavits, and because the affidavits contain directly conflicting information, the Court cannot make any definitive findings regarding the content of the January 28-29 discussions. Nevertheless, certain facts are clear from the record. The January 28-29 discussions arose in the middle of a creditor's examination where Garratt was aggressively pursuing collection on the judgment against Meathe. Meathe was required to make disclosures about his assets to Garratt under oath. Meathe was represented by counsel. There is no suggestion that Meathe or his counsel ever discussed or entered into a confidentiality or protective order with Garratt regarding the use of any information discussed off the record. Garratt already had substantial information about Lansing Farms from other sources. Given this context, the Court is reluctant to presume that Meathe disclosed any confidential information to Garratt that he was not required to disclose. Moreover, even if the Court were to presume that confidential information was disclosed, Meathe has made no showing that any of the information disclosed could be significantly harmful to him in this action. *See In re Modanlo*, 342 B.R.

9

230, 237 (D. Md. 2006) (denying motion for disqualification in part because debtor failed to show that any information shared with creditor's attorney was significantly harmful).

Because the creation of an attorney-client relationship is questionable, and because Meathe has not identified the specific confidences disclosed or how they might significantly harm him in this litigation, the Court concludes that Meathe has not met his burden of showing that there is a reasonable possibility that Garratt engaged in some specifically identifiable impropriety that warrants his disqualification from representing Eaton in this action. The Court will accordingly deny Meathe's motion to disqualify. In making this determination, the Court has confined itself to the present record. Should additional information be disclosed during the course of this litigation that suggests a violation of the rules of professional conduct, the Court will not hesitate to revisit this issue.

An order consistent with this opinion will be entered.


Dated: <u>November 27, 2011</u>              /s/ Robert Holmes Bell
                                                                      ROBERT HOLMES BELL
                                                                      UNITED STATES DISTRICT JUDGE